UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | CRIMINAL NO. 4:19-cr-135-2 |
| FRANZ H. MULLER-HUBER, Defendant. | UNDER SEAL |

## PLEA AGREEMENT

The United States of America, by and through Ryan K. Patrick, United States Attorney for the Southern District of Texas, and John P. Pearson and Robert S. Johnson, Assistant United States Attorneys, and Robert Zink, Chief of the Fraud Section of the Criminal Division of the United States Department of Justice ("Fraud Section"), and Sarah E. Edwards and Sonali D. Patel, Trial Attorneys, and the Defendant, Franz Herman Muller Huber ("Defendant"), and Defendant's counsel, pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure, state that they have entered into an agreement, the terms and conditions of which are as follows:

### Defendant's Agreement

1. Defendant agrees to plead guilty to Counts One and Two of the Information. Count One charges Defendant with conspiracy to violate the Foreign Corrupt Practices Act, Title 15, United States Code, Section 78dd-2 ("FCPA"), in violation of Title 18, United States Code, Section 371. Count Two charges the Defendant with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 371. Defendant, by entering this plea, agrees that he is waiving any right to have the facts that the law makes essential to the punishment either charged in the Information, or proved to a jury or proven beyond a reasonable doubt.

### Punishment Range

2. The <u>statutory</u> maximum penalty for each violation of Title 18, United States Code, Section 371, is imprisonment of not more than five years and a fine of not more than $250,000 or twice the gross gain or loss, for a total maximum penalty of not more than ten years and a fine of not more than $500,000 or twice the gross gain or loss. Additionally, Defendant may receive a term of supervised release after imprisonment of up to three years on each count. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(b)(2). Defendant acknowledges and understands that if he should violate the conditions of any period of supervised release which may be imposed as part of his sentence, then Defendant may be imprisoned for up to two years, without credit for time already served on the term of supervised release prior to such violation. *See* Title 18, United States Code, Sections 3559(a)(4) and 3583(e)(3). Defendant understands that he cannot have the imposition or execution of the sentence suspended, nor is he eligible for parole.

### Mandatory Special Assessment

3. Pursuant to Title 18, United States Code, Section 3013(a)(2)(A), immediately after sentencing, Defendant will pay to the Clerk of the United States District Court a special assessment in the amount of one hundred dollars ($100.00) per count of conviction. The payment will be by cashier's check or money order, payable to the Clerk of the United States District Court, c/o District Clerk's Office, P.O. Box 61010, Houston, Texas 77208, Attention: Finance.

### Immigration Consequences

4. Defendant recognizes that pleading guilty may have consequences with respect to his immigration status. Defendant understands that if he is not a citizen of the United States, by pleading guilty he may be removed from the United States, denied citizenship, and denied

2

admission to the United States in the future. Defendant understands that if he is a naturalized United States citizen, pleading guilty may result in immigration consequences, such as denaturalization and potential deportation or removal from the United States. Defendant's attorney has advised Defendant of the potential immigration consequences resulting from Defendant's plea of guilty, and Defendant affirms that he wants to plead guilty regardless of any immigration consequences that may result from the guilty plea and conviction.

**Cooperation**

5. The parties understand this agreement carries the potential for a motion for departure under Section 5K1.1 of the Sentencing Guidelines. Defendant understands and agrees that whether such a motion is filed will be determined solely by the United States through the United States Attorney for the Southern District of Texas and the Fraud Section. Should Defendant's cooperation, in the sole judgment and discretion of the United States, amount to "substantial assistance," the United States reserves the sole right to file a motion for departure pursuant to Section 5K1.1 of the United States Sentencing Guidelines. Defendant further agrees to persist in that plea through sentencing, fully cooperate with the United States, and not oppose the forfeiture of assets contemplated in paragraph 22 of this agreement. Defendant understands and agrees that the United States will request that sentencing be deferred until that cooperation is complete.

6. Defendant understands and agrees that "fully cooperate," as that term is used herein, includes providing all information relating to any criminal activity known to Defendant, including but not limited to violations of the Foreign Corrupt Practices Act, wire fraud, money laundering, and any related crimes. Defendant understands that such information includes both state and federal offenses arising therefrom. In that regard:

3

(a) Defendant agrees that this plea agreement binds only the United States Attorney for the Southern District of Texas, the Fraud Section, and Defendant; it does not bind any other United States Attorney or any other unit of the Department of Justice;

(b) Defendant agrees to testify truthfully as a witness before a grand jury or in any other judicial or administrative proceeding when called upon to do so by the United States. Defendant further agrees to waive his Fifth Amendment privilege against self-incrimination for the purpose of this agreement;

(c) Defendant agrees to voluntarily attend any interviews and conferences as the United States may request;

(d) Defendant agrees to provide truthful, complete and accurate information and testimony and understands any false statements made by the defendant to the Grand Jury or at any court proceeding (criminal or civil), or to a government agent or attorney, can and will be prosecuted under the appropriate perjury, false statement, or obstruction statutes;

(e) Defendant agrees to provide to the United States all documents in his possession or under his control relating to all areas of inquiry and investigation; and

(f) Should the recommended departure, if any, not meet Defendant's expectations, the Defendant understands that he remains bound by the terms of this agreement and cannot, for that reason alone, withdraw his plea.

**Waiver of Appeal and Collateral Review**

7. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal the conviction and sentence imposed. Defendant is also aware that Title 28, United States Code, Section 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the judgment of conviction and sentence has become final. Defendant knowingly and voluntarily waives the right to appeal or "collaterally attack" the conviction and sentence, except that Defendant does not waive the right to raise a claim of ineffective assistance of counsel on direct appeal, if otherwise permitted, or on collateral review in a motion under Title 28, United States Code, Section 2255.

4

Defendant's knowing and voluntary waiver of the right to appeal or collaterally attack the conviction and sentence includes waiving the right to raise on appeal or on collateral review any argument that (1) the statutes to which the Defendant is pleading guilty are unconstitutional and (2) the admitted conduct does not fall within the scope of the statutes. In the event Defendant files a notice of appeal following the imposition of the sentence or later collaterally attacks his conviction or sentence, the United States will assert its rights under this agreement and seek specific performance of these waivers.

8. Defendant waives all defenses based on venue, speedy trial under the Constitution and Speedy Trial Act, and the statute of limitations in the event that (a) Defendant's conviction is later vacated for any reason, (b) Defendant violates any provision of this Agreement, or (c) Defendant's plea is later withdrawn.

9. In agreeing to these waivers, Defendant is aware that a sentence has not yet been determined by the Court. Defendant is also aware that any estimate of the possible sentencing range under the Sentencing Guidelines that he may have received from his counsel, the United States, or the Probation Office, is a prediction and not a promise, did not induce his guilty plea, and is not binding on the United States, the Probation Office, or the Court. The United States does not make any promise or representation concerning what sentence Defendant will receive. Defendant further understands and agrees that the United States Sentencing Guidelines are "effectively advisory" to the Court. *See United States v. Booker*, 543 U.S. 220 (2005). Accordingly, Defendant understands that, although the Court must consult the Sentencing Guidelines and must take them into account when sentencing Defendant, the Court is not bound to follow the Sentencing Guidelines nor sentence Defendant within the calculated guideline range.

5

10. Defendant understands and agrees that each and all waivers contained in the agreement are made in exchange for the concessions made by the United States in this plea agreement.

### The United States' Agreements

11. The United States agrees to each of the following:

(a) At the time of sentencing, the United States agrees not to oppose Defendant's anticipated request to the Court and the United States Probation Office that he receive a two (2) level downward adjustment pursuant to Section 3E1.1(a) of the United States Sentencing Guidelines, should Defendant accept responsibility as contemplated by the Sentencing Guidelines; and

(b) If the Court determines that Defendant qualifies for an adjustment under Section 3E1.1(a) of the United States Sentencing Guidelines, and the offense level prior to operation of Section 3E1.1(a) is 16 or greater, the United States will move under Section 3E1.1(b) for an additional one-level reduction because Defendant timely notified authorities of his intent to plead guilty, thereby permitting the United States to avoid preparing for trial and permitting the United States and the Court to allocate their resources more efficiently.

### Agreement Binding - Southern District of Texas and Fraud Section Only

12. The United States Attorney's Office for the Southern District of Texas and the Fraud Section agree that they will not further criminally prosecute Defendant for offenses arising from conduct charged in the Information. This plea agreement binds only the United States Attorney's Office for the Southern District of Texas, the Fraud Section, and Defendant. It does not bind any other United States Attorney's Office or any other component of the Department of Justice. The United States Attorney's Office for the Southern District of Texas and the Fraud Section will bring this plea agreement and the full extent of Defendant's cooperation to the attention of other prosecuting offices, if requested.

### United States' Non-Waiver of Appeal

13. The United States reserves the right to carry out its responsibilities under guidelines sentencing. Specifically, the United States reserves the right:

(a) to bring its version of the facts of this case, including its evidence file and any investigative files, to the attention of the Probation Office in connection with that office's preparation of a presentence report;

(b) to set forth or dispute sentencing factors or facts material to sentencing;

(c) to seek resolution of such factors or facts in conference with Defendant's counsel and the Probation Office;

(d) to file a pleading relating to these issues, in accordance with Section 6A1.2 of the United States Sentencing Guidelines and Title 18, United States Code, Section 3553(a); and

(e) to appeal the sentence imposed or the manner in which it was determined.

### Sentence Determination

14. Defendant is aware that the sentence will be imposed after consideration of the United States Sentencing Guidelines and Policy Statements, which are only advisory, as well as the provisions of Title 18, United States Code, Section 3553(a). Defendant nonetheless acknowledges and agrees that the Court has authority to impose any sentence up to and including the statutory maximum set for the offenses to which Defendant pleads guilty, and that the sentence to be imposed is within the sole discretion of the sentencing judge after the Court has consulted the applicable Sentencing Guidelines. Defendant understands and agrees that the parties' positions regarding the application of the Sentencing Guidelines do not bind the Court and that the sentence imposed is within the discretion of the sentencing judge. If the Court should impose any sentence up to the maximum established by statute, or should the Court order any or all of the

7

sentences imposed to run consecutively, Defendant cannot, for that reason alone, withdraw a guilty plea, and will remain bound to fulfill all of the obligations under this plea agreement.

### Rights at Trial

15. Defendant understands that by entering into this agreement, he surrenders certain rights as provided in this plea agreement. Defendant understands that the rights of a defendant include the following:

> (a) Defendant has a right to have the United States Attorney present the charges in the Information to a Grand Jury consisting of not less than sixteen (16) nor more than twenty-three (23) impartial citizens, who would hear the facts of the case as presented by the United States Attorney and witnesses, and then return an indictment against the defendant only if twelve (12) or more members of the Grand Jury found that there was probable cause to believe the defendant committed the crime charged in the Information.
>
> (b) If Defendant persisted in a plea of not guilty to the charges, Defendant would have the right to a speedy jury trial with the assistance of counsel. The trial may be conducted by a judge sitting without a jury if Defendant, the United States, and the court all agree.
>
> (c) At a trial, the United States would be required to present witnesses and other evidence against Defendant. Defendant would have the opportunity to confront those witnesses and his attorney would be allowed to cross-examine them. In turn, Defendant could, but would not be required to, present witnesses and other evidence on his own behalf. If the witnesses for Defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court; and
>
> (d) At a trial, Defendant could rely on a privilege against self-incrimination and decline to testify, and no inference of guilt could be drawn from such refusal to testify. However, if Defendant desired to do so, he could testify on his own behalf.

### Factual Basis for Guilty Plea

16. Defendant is pleading guilty because he is in fact guilty of the charges contained in Counts One and Two of the Information. If this case were to proceed to trial, the United States

8

could prove each element of the offenses beyond a reasonable doubt. The following facts, among others would be offered to establish Defendant's guilt:

Petroleos de Venezuela S.A. (together with its subsidiaries and affiliates, "PDVSA") was the Venezuelan state-owned and state-controlled oil company. PDVSA was responsible for the exploration, production, refining, transportation, and trade in energy resources in Venezuela and provided funding for other operations of the Venezuelan government. PDVSA and its wholly-owned subsidiaries, including PDVSA Services, Inc. ("PSI"), were "instrumentalities" of the Venezuelan government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).

At all relevant times, Defendant, a dual Venezuelan-Swiss citizen and resident of the United States, was employed by and served as the President of the company identified as "Company A" in the Information. Company A was a U.S.-based supplier of industrial equipment that was incorporated in the United States. Company A was a subsidiary of a Venezuelan corporation, and also had a Curacao-based affiliate identified as "Company A's Affiliate" in the Information.

One way that PDVSA awarded contracts for energy services and equipment was through sole-source contracts, which was not a competitive process, but rather assigned a single company as the exclusive provider of a certain type or a certain brand of equipment. Beginning in or around 2004, Company A served as PDVSA's sole-source supplier of equipment manufactured by another company headquartered in the United States. Company A's sole-source agreement ensured that whenever an end user requested equipment manufactured by this company the purchase request went directly to Company A, without going through a competitive bidding process.

9

Beginning in or around 2009 and continuing through at least 2013, Defendant conspired with Rafael Pinto, another employee of Company A, and others, to pay bribes to three Venezuelan officials employed at PSI: Jose Camacho, Ivan Guedez, and an individual identified in the Information as Official A. In exchange for money, the three PSI officials agreed to assist Company A in its business with PDVSA—including by urging PDVSA end users to request equipment sold by Company A and prioritizing Company A invoices for payment at a time when not all PDVSA vendors were receiving payment.

Defendant, Pinto, Camacho, Guedez, and Official A agreed that each time Company A received payment from PDVSA, Pinto would notify the PSI officials. Then, using the name of a Panamanian shell company, identified in the Information as "Shell Company A," Guedez would create a false invoice in the amount of 3% of whatever payment Company A had just received from PDVSA. Next, Guedez would email the false invoice to Defendant, who then caused Company A's Affiliate to send money to a bank account held in the name of Shell Company A (and identified as the "Swiss Account" in the Information.) After money was wired to the Swiss Account, Guedez divided it equally between himself, Camacho, Official A, and Pinto. Later, after Official A left PSI, the money was divided equally between Guedez, Camacho, and Pinto. Beginning in March 2012, Guedez sent 0.5% of each payment to Defendant, with the remaining 2.5% split between Guedez, Camacho, and Pinto. In order to conceal the nature, source, and ownership of the funds of the scheme, the conspirators sent the proceeds from the Swiss Account to other offshore accounts, accounts in the names of third parties, and accounts in the names of corporate entities.

10

For example, on or about February 16, 2011, Pinto sent an email to Guedez and Camacho listing purchase orders for which Company A had been paid and noting the three-percent calculation for this group of invoices as $167,601.99. On or about February 21, 2011, Guedez emailed Defendant a false invoice in the amount of $167,601.99 in the name of Shell Company A. The invoice falsely stated, in Spanish, that Shell Company A had performed consulting services for Company A's Affiliate and directed Company A's affiliate to send payment to the Swiss Account, despite the fact that Shell Company A had not actually performed any services for Company A's Affiliate. On or about March 10, 2011, Defendant caused $167,601.99 to be wired to the Swiss Account as directed by the fraudulent invoice.

On or about December 2, 2012, Pinto sent an email to Guedez and Camacho containing a chart that listed various payments from PDVSA to Company A. This chart stated that the total amount of payments to Company A was $2,073,905.69, and the corresponding 3% bribe payment was $62,217.17. On or about December 26, 2012, Guedez sent an email to Defendant and attached to the email a false invoice from Shell Company A to Company A's Affiliate for $62,217.17, despite the fact that Shell Company A had not actually performed any services for Company A's Affiliate. On or about January 16, 2013, Defendant caused $62,217.17 to be wired to the Swiss Account as directed by the fraudulent invoice.

In total, between 2009 and 2013, Defendant and Pinto caused Company A's Affiliate to send approximately $3.47 million dollars to the Swiss Account as part of the bribery and kickback scheme. In total, $263,402.83 was sent from the Swiss Account to a bank account in Puerto Rico, identified as the "Puerto Rico Account" in the Information, at Defendant's direction and for his use. Specifically, on or about March 1, 2012, Defendant caused $80,617.00 to be transferred to

11

the Puerto Rico Account; on or about May 14, 2012, Defendant caused $98,321.71 to be transferred to the Puerto Rico Account; and on or about December 27, 2012, Defendant caused $84,624.28 to be transferred to the Puerto Rico Account. Senior executives at Company A's parent entity knew of the bribes to PDVSA officials in exchange for assistance with Company A's business, but they were not aware that Defendant and Pinto were also receiving kickbacks as part of the scheme.

In addition to conspiring to bribe Guedez, Camacho, and Official A, Defendant and Pinto also conspired to bribe at least one other PDVSA official and caused Company A to pay at least an additional $1.5 million dollars in bribes, and participated in illegal currency-exchange schemes.

### Breach of Plea Agreement

17. If Defendant should fail in any way to fulfill completely all of the obligations under this plea agreement, the United States will be released from its obligations under the plea agreement, and Defendant's plea and sentence will stand. If at any time Defendant retains, conceals, or disposes of assets in violation of this plea agreement, or if Defendant knowingly withholds evidence or is otherwise not completely truthful with the United States, then the United States may move the Court to set aside the guilty plea and reinstate prosecution. Any information and documents that have been disclosed by Defendant, whether prior to or subsequent to this plea agreement, and all leads derived therefrom, will be used against defendant in any prosecution.

### Restitution, Forfeiture, and Fines – Generally

18. This plea agreement is being entered into by the United States on the basis of Defendant's express representation that he will make a full and complete disclosure of all assets over which he exercises direct or indirect control, or in which he has any financial interest.

Defendant agrees not to dispose of any assets or take any action that would effect a transfer of property in which he has an interest, unless Defendant obtains the prior written permission of the United States.

19. Defendant agrees to make complete financial disclosure by truthfully executing a sworn financial statement (Form OBD-500 or similar form) within 30 days of signing this plea agreement. Defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms permitting the United States to obtain tax information, bank account records, credit histories, and social security information. Defendant agrees to discuss and answer any questions by the United States relating to Defendant's complete financial disclosure.

20. Defendant agrees to take all steps necessary to pass clear title to forfeitable assets to the United States and to assist fully in the collection of restitution and fines, including, but not limited to, surrendering title, executing a warranty deed, signing a consent decree, stipulating to facts regarding the transfer of title and the basis for the forfeiture, and signing any other documents necessary to effectuate such transfer. Defendant also agrees to direct any banks which have custody of his assets to deliver all funds and records of such assets to the United States.

21. Defendant understands that forfeiture, restitution, and fines are separate components of sentencing and are separate obligations.

### Forfeiture

22. Defendant stipulates and agrees that he personally controlled and obtained approximately $263,402.83 as a result of the conspiracy described in Count Two. Defendant stipulates and agrees that the factual basis for his guilty plea supports the forfeiture of $263,402.83

13

against him and in favor of the United States, and Defendant agrees to the imposition of a personal money judgement for that amount.

23. Defendant stipulates and admits that one or more of the conditions set forth in Title 21, United States Code, Section 853(p), exists. Defendant agrees to forfeit any of his property until the money judgment is fully satisfied.

24. Defendant agrees to waive any and all interest in any asset which is the subject of a related administrative or judicial forfeiture proceeding, whether criminal or civil, federal or state.

26. Defendant consents to any order of forfeiture becoming final as to Defendant immediately following this guilty plea, pursuant to Federal Rule of Criminal Procedure 32.2(b)(4)(A).

27. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the forfeiture of property in any manner, including by direct appeal or in a collateral proceeding.

**Fines**

28. Defendant understands that under the Sentencing Guidelines the Court is permitted to order Defendant to pay a fine that is sufficient to reimburse the government for the costs of any imprisonment or term of supervised release, if any. Defendant agrees that any fine imposed by the Court will be due and payable immediately, and Defendant will not attempt to avoid or delay payment. Subject to the provisions of paragraph 7 above, Defendant waives the right to challenge the fine in any manner, including by direct appeal or in a collateral proceeding.

## Complete Agreement

28. This written plea agreement, consisting of 18 pages, including the attached addendum of Defendant and his attorney, constitutes the complete plea agreement between the United States, Defendant, and Defendant's counsel. No promises or representations have been made by the United States except as set forth in writing in this plea agreement. Defendant acknowledges that no threats have been made against him and that he is pleading guilty freely and voluntarily because he is guilty.

29. Any modification of this plea agreement must be in writing and signed by all parties.

Filed at HOUSTON, Texas, on AUGUST 21, 2019, 2019.

_____
Franz Hermann Muller Huber
Defendant

Subscribed and sworn to before me on _____, 2019.

DAVID J. BRADLEY, Clerk
UNITED STATES DISTRICT CLERK

By: _Ruth R. Guerrero_
Deputy United States District Clerk

APPROVED:

Ryan K. Patrick
United States Attorney

15

By: _____
John P. Pearson
Robert S. Johnston
Assistant United States Attorneys
Southern District of Texas
Telephone: (713) 567-9342

Robert Zink
Chief, Fraud Section

By: _____
Sarah E. Edwards
Sonali D. Patel
Trial Attorneys
Telephone: (202) 305-6761

_____
Kevin D. Collins
Attorney for Defendant

16

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

UNITED STATES OF AMERICA

v.

CRIMINAL NO. 4:19-cr-135-2

FRANZ H. MULLER-HUBER,
Defendant.

## PLEA AGREEMENT -- ADDENDUM

I have fully explained to Defendant his rights with respect to the pending Information. These rights and the plea agreement have been explained to the Defendant in Spanish. I have reviewed the provisions of the United States Sentencing Commission's Guidelines Manual and Policy Statements and I have fully and carefully explained to Defendant the provisions of those Guidelines which may apply in this case. I have also explained to Defendant that the Sentencing Guidelines are only advisory and the court may sentence Defendant up to the maximum allowed by statute per count of conviction. Further, I have carefully reviewed every part of this plea agreement with Defendant. To my knowledge, Defendant's decision to enter into this agreement is an informed and voluntary one.

_____        8/21/2019
Kevin D. Collins                         Date
Attorney for Defendant

17

I have consulted with my attorney and fully understand all my rights with respect to the Information pending against me. My attorney has fully explained, and I understand, all my rights with respect to the provisions of the United States Sentencing Commission's Guidelines Manual which may apply in my case. I have read and carefully reviewed every part of this plea agreement with my attorney. I understand this agreement and I voluntarily agree to its terms.

_____      8/21/2019
Franz Herman Muller Huber             Date
Defendant